The next matter on our calendar is Guo v. Sessions. Good morning, Your Honor. May I please have a quote? My name is Danny Kao. I'm on behalf of the petitioners. This case is an asylum case, and the petitioner comes into the United States in 2011, and he was dissatisfied with the Chinese authorities because his grandpa passed away in hospitals due to unable to pay for the deposit. So he joined the CDP, and he participated in protests. He filed an asylum application within one year of his arrival. Subsequently, the police went to his home, harassed his father, and at the trial he gave the specific candid testimony and described how he participated in protests more than 20 times and he published the internet articles, more than a dozen. Did he get his picture taken at these protests? Yes, Your Honor. Were they publicized, those pictures? Yes, Your Honor. It's on the party website, and then the internet article is also published on the party's website with his headshot and the name. In addition to those, he submitted evidence from the party members, a sworn affidavit attesting his participation, and also he submitted a letter from his father describing a police visit to his home and harassed him. So the critical question is whether the Chinese government is interested in pursuing Mr. Guo if he returns to China. Correct, Your Honor. And the evidence of that is the statement by his father. Is that not so? That's one of the evidence, and he testified at the trial, and how many times police come, and what happened at family? Well, he testified, but he doesn't know, right? I mean, that's all hearsay from as far as he's concerned. He wasn't there when the police... Obviously, he's in the United States. He can't testify firsthand what happened in China. Correct. So the person who provided any evidence is his father. Correct, Your Honor. Yes. But the standard of the well-founded fear in this case is objective component, and the Supreme Court says if there's the credibility of the asylum seekers, if there's a 10% probability the government may be prosecuted, then he may be able to establish the well-founded fear. So he testified. He has protested the internet post article in addition to all this, and then he has the father's letter, even though the judge gave a limited weight of this evidence. But this evidence is admitted into the evidence. How do you distinguish this case from YC against Holder, where this court held that it's not enough to give a family member letter? Yes. In YC, in the first time of YC, this court remained the case back to the IJ to ask the IJ to evaluate whether this YC has one printed article and then one candlelight vigil is sufficient to raise the awareness of the Chinese authority if he ever to return. And then later on, the judge discusses the one printed article, and the YC admit he does not know whether this printed article is circulated in China. And then also on the candlelight vigils, there's no sworn testimony from the members to YC. So this case, contrary to YC, Mr. Guo has more than a dozen internet publications, and Chinese authorities monitor internet, and he has more than 20 protests with the photos, and he showed the evidence, the father's letters. And most importantly, the judge giving rule, his testimony is credible. It's a candidate-specific, it's credible. Correct, yes. So therefore, it's different from the YC. If the YC is on the left side, if the minimum, did not reach the minimum requirement of this objective reasonable standards, and we believe that Mr. Guo does. So I reserve my time for the... Thank you. Thank you. We'll hear from the government. Good morning, your honors. May it please the court. My name is David Shore. I represent the United States. The petitioner in this matter, Mr. Zhongfeng Guo, had a full and fair opportunity to present his asylum claim before an asylum officer, for an immigration judge, and finally on appeal to the Board of Immigration Appeals. At every level, he was not granted asylum, because he lacked objective evidence of a likelihood that he would suffer persecution in China. Is that enough as evidence goes? Well, yes. The one piece of evidence that he submitted to show that the Chinese government was aware or likely to become aware of his activities and inclined to harm him, which is his burden, was this letter. This letter, the immigration judge accorded minimal weight to the letter. It was unsworn from an interested party abroad, his father. And attributing a weight to the evidence, weighing the evidence, that's within the authority of the immigration court. And this court has stated repeatedly that letters from interested witnesses abroad, that the agency may properly accord minimal or little weight to this type of extent. I mean, he could not have been found credible if the immigration judge thought that he asked his father to concoct something, right? Yes, Your Honor. There's no finding that he engaged in any fraud or anything like that. Right. So the reason to give minimal weight to this is some assumption that his father spontaneously in China understood enough about American immigration law to realize that it would be helpful to his son to have evidence that the Chinese police had visited the father and made threats against the son. And he did all that without prompting from the son. Well, certainly there was no finding in that regard, Your Honor. Now, the immigration judge, you know, didn't try to sort of get into the head of, you know, the declarant, the father here. Let me ask you this. What would have happened if the letter had said, I hereby affirm under penalties of perjury pursuant to the laws of the United States, that the following is true? Is that the only thing that's missing to make this? No, no, no. This is an unsworn, sorry, it's not merely that this is unsworn. This comes from an interested party, his father, who's, and it's for the purpose of helping his son achieve asylum. Now there's certainly, I'm sorry. Who else would know that his home village, that his house was visited except someone who lived in that house, who happens to be his father. That's the only way to get that particular evidence. Well, yes, Your Honor. But there's other objective evidence that could have been provided to show that yes, the Chinese government is interested in the New York-based China Democracy Party. But given that dearth of evidence, the only objective evidence was this letter. And so had there been other evidence to put this letter into a larger context, then yes, perhaps the letter could have carried more probative weight. That would have been a better case. But I think the follow-up to Judge Lynch's question is if you find that the guy is credible, then there's an implicit finding that he's not putting his and if he's not putting his father up to this, then the absence of the attestation on the letter shouldn't be determinative. Well, Your Honor, that his fear was subjectively, so a well-founded fear has to be subjectively genuine and objectively reasonable. And it's that second prong that's missing in this case. Yeah, but what Mr. Gore testifies to is, okay, I'm afraid, and that's found to be credible. And of course, it could be the case that he's telling the truth that he's afraid, and because he's afraid, he lies about other stuff. But that's not the finding of the immigration judge. The immigration judge found his testimony to be credible. And part of his testimony is, I got this letter from my father, right? And implicitly, and I didn't ask him, please give me a fake letter and here's what it should say. Because if anybody thought that, then you would find him not credible, right? So if he's saying this came spontaneously from the father, what would be the basis for saying that the father is an interested witness? What is he interested in if he hasn't been told, I'm applying for asylum, and this is evidence that would help me. So since you have an interest in helping me, go to it. Family abroad has been petitioned for immigration status down the road. And this letter was certainly created for the purpose of helping him obtain asylum status. Do we know that? Do we know that? I mean, in other words, what does the record say about when this letter came and what it said? Did it come after he had already applied for asylum? My belief is yes, I believe the letters at page 343 of the record, I'm not off the top of my head, I don't recall the date. But yes, I believe I believe it was in support of his son's asylum claim. Now, had the immigration judge said, I find that this letter is fraudulent. Well, the immigration judge, you know, an adverse credibility finding would have to be based on something in the record and not just speculation by the immigration judge. I understand that he can give this limited weight. But I'm trying to understand what, and I understand that the father might have an interest in the son's proceeding, except if there is evidence, and I'm not sure there is, maybe your adversary can help me out with that, as to when this letter came and what its purpose was. In other words, I guess if the police came to, if my son were abroad and the police came to my house and said, we're going to arrest your son when he comes back, I might write him and say, what's going on? The police are here. They're interested in you. What is the story? That's a little different than, oh, I hear you're applying for asylum. Maybe it would be useful to you to have this information, right? So it seems to me there could be a lot of factual exploration. Now, I don't know whose burden it is to do that factual exploration, and I'm not sure what the record actually says about these matters of detail, but it seems kind of rote to just say, well, under any circumstances, it's his father, so it doesn't count. No, no. And the immigration judge on the board didn't purport to apply some sort of blanket rule or rejection of this type of evidence across the board. The immigration judge was concerned with the evidence before him. And this letter, I believe that the letter, speaking from memory, and I don't want to misstate the record, but does reference the asylum claim. So this was, this was in furtherance of Mr. Guo's asylum claim. Now, apart from that letter, the only evidence that Mr. Guo presented to establish a, you know, well-founded fear that, you know, that... The objective prong. The objective prong was the 2012 country report. And this court has looked at it, at that very same report in Jianping Li, the case that was the subject of the 20HA letter the government filed. And there, the court agreed that that same 2012 country report did not show that a member of the New York-based China Democracy Party, or a person in her circumstance, was similarly situated to domestic political dissidents in China. And that's really where this case fails. There's a dearth of evidence that individual, individuals in Mr. Guo's circumstance, who solely engage in protest activities in the United States, that they are similarly situated to the domestic dissidents in China. Even assuming that's true, and let's go with that, I still think you're kind of begging the question, which is, if we were to accept the father's letter as true, well then you don't report, right? Then you've got a subjective fear and an objective manifestation that it's well justified. So it does all come down to the father's letter, even without the report. Sure. Though the immigration judge has the authority to weigh the evidence. This court is not empowered to re-weigh the evidence. And he accorded that letter minimal weight, particularly given the context, the country condition evidence. Now this court remarked in YAC that claims based on pro-democracy activities in the United States are particularly easy to manufacture. Anyone can post something on the internet. And given how easily these claims can be concocted, the immigration judge and the board did not err in acquiring objective evidence. And here there simply was none. So for those reasons, the court should deny this petition for review. Thank you, counsel. Thank you, your honors. Mr. Kuo, can you answer the question of when the letter arrived in relation to the proceedings? Yes, the father's letter is in preparation for the merry hearing and discussion of what happened, all these police visits, the family harassed the fathers. So this wasn't the kind of letter where he said, dear son Kuo, let me tell you, we built a new pump in the village and everything's going nicely here, but you should also know that there's a bunch of other things going on. People came here looking for you and they were scary people. It wasn't that kind of casual writing letter. It was a letter written for the immigration proceeding? That's written for immigration proceeding, but that conversation already happened in the very first time when the police came and the father and the son will have to talk, hey, what's going on, why is... Testimony to that effect, that is, did the petitioner testify at the hearing? My father told me this months ago, I asked him for this letter to document it, but he told me this spontaneously at some earlier point. Is there testimony to that effect? Yes. Where would we find that? The testimony was the three, four hours in the proceeding, and the petitioner described each time when the police come, but the father's letter is just one of the evidence supporting the objective components. He also relied on the 2012 country report. In country report, the country report in 2012, the specifics say there were tens of, I quote, tens of thousands of political prisoners remain incarcerated, some in prison and others in RTL camp or the administrative detention, that's in the CAR 287. And then country report went on to describe who certain people with certain name, but 99% of these people remain incarcerated, political prison is unnamed. And the petitioner, and also in 2012 petitioner see the country report say Chinese authority incarcerate, arrest the peaceful internet posters who post a blog, and they arrest. And then there's 40,000 political dissident person like me in this psychiatry hospital. Some of them is the CDP members. You're talking about Chinese dissidents in China? Chinese dissident, we are talking about country report, yes. So there are tens of thousands political prison unnamed. And so the respondent feels, if I go back, I could be one of them, unnamed political prison. In addition to that, my father told me the police already visit my home. And therefore I'm afraid the objective components of this test is not whether the family is being arrested. It's the probabilities likely to become aware of his pro-democracy activity. Nobody has to be worried about the possibility that people are going to try to get asylum by coming here and writing the kinds of articles that might deliberately inflame a foreign government, not because they're so interested in politics, but because they're just trying to get asylum. Yes, of course. How do we address that concern? Therefore, we have the asylum office. We have immigration judge. We have go through the merit hearing. In this case, it's several hours discussion. He has to be crossed by the government attorneys. And then after all this, the judge said he has a diverse in his protest activity and considerably in amount. And then he found his testimony is credible. The limited way doesn't mean there's no way. It means the letter is admit into the evidence. And that is not without any way. There's a limited way. It means judge acknowledge there's a things and this is political asylum case. There's no way he can got the so-called sworn testimony. His father just cannot do that. So couple with all these, his numerous activities, and then his credible testimony, the country report suggests there's a south tensile, southern political prison. We believe he satisfied the objective component of this well-founded fear. Thank you. Thank you. Thank you both. We'll take this case under advisement.